### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER RYAN LESLIE,** | ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | **4:20-cv-00512-CLM** |
| **KILOLO KIJIKAZI, Acting Commissioner of the Social Security Administration,** | ) ) ) ) ) | |
| **Defendant.** | ) | |

### **MEMORANDUM OPINION**

Christopher Ryan Leslie seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Leslie's application in an opinion written by an Administrative Law Judge ("ALJ"). Leslie argues: (1) that the ALJ should have afforded more weight to the opinion of Dr. June Nichols, an examining consultative psychologist, and (2) that substantial evidence does not support the ALJ's residual functional capacity assessment.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of benefits.

## I. Statement of the Case

### A. Leslie's Disability, as told to the ALJ

Leslie was 23 years old at the time of his alleged disability onset date. R. 38, 189. Leslie has either a 10th or 11th grade education and while in school took special education classes. R. 49, 53. And Leslie has past work experience as a material handler. R. 38.

In his disability report, Leslie alleged that he suffered from epilepsy and depression. R. 212 At the ALJ hearing, Leslie testified that after suffering a massive head injury in 2008 he began to develop seizures. R. 51. Leslie's biggest trigger for seizures is stress. R. 52. Leslie testified that his worst seizures last up to 30 minutes and take him two to three days to recover from. R. 56. Leslie then stated that he also suffers from depression and PTSD. R. 58–60.

Leslie lives with his girlfriend. R. 48. According to Leslie, he "can't do crowds" and gets stressed when the bills come in. R. 57–58. And Leslie has a legal caregiver who takes care of his medical situations and fills out paperwork for him. R. 52–53. Though Leslie has a driver's license and drives on occasion, he doesn't drive when he starts to "feel funny," *i.e.*, like a seizure may be coming on. R. 49, 53.

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of determining Leslie's residual functional capacity is the most important step here, as all of Leslie's challenges flow from the ALJ's decision at this point.

### C. Leslie's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Leslie applied for disability insurance benefits, a period of disability, and SSI in February 2017, claiming that he was unable to work because of various ailments, including epilepsy and depression. After receiving an initial denial in May 2017, Leslie requested a hearing, which the ALJ conducted in November 2018. The ALJ ultimately issued an opinion denying Leslie's claims in February 2019. R. 27–39.

At Step 1, the ALJ determined that Leslie was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined that Leslie suffered from the following severe impairments: seizure disorder, obesity, bipolar disorder, anxiety, and learning disorder.

At Step 3, the ALJ found that none of Leslie's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Leslie's residual functional capacity.

The ALJ determined that Leslie had the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

- Leslie cannot climb ladders and scaffolds.

- Leslie cannot work around large, open bodies of water.

- Leslie cannot be exposed to hazardous machinery, unprotected heights, and commercial driving.

- Leslie can understand and remember short and simple instructions but cannot understand and remember detailed or complex instructions.

- Leslie can perform simple, routine, repetitive tasks but cannot perform detailed or complex tasks.

- Leslie can tolerate occasional contact with the general public and coworkers.

- Leslie can tolerate occasional changes in the workplace so long as they are gradual and explained.

- Leslie's job duties should deal primarily with things, not people.

At Step 4, the ALJ found that Leslie could not perform his past relevant work. At Step 5, the ALJ determined that Leslie could perform jobs, such as dishwasher, cleaner, and cook helper, that exist in significant numbers in the national economy and thus Leslie was not disabled under the Social Security Act.

Leslie requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the

Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. Legal Analysis

Leslie makes two arguments for why the ALJ erred in finding him not disabled. First, Leslie argues that the ALJ improperly rejected the opinion of Dr. Nichols, a consultative examiner. Second, Leslie asserts that the ALJ's residual functional capacity assessment is not supported by substantial evidence. The court will address each argument in turn.

**A.     Dr. Nichols's Opinion Evidence**

Leslie first argues that the ALJ improperly discounted the opinion of Dr. June Nichols who performed a psychological consultative examination on Leslie in April 2017. After the consultative examination, Dr. Nichols wrote that Leslie suffers from severe anxiety and depression. R. 449. She also found that Leslie suffered from learning disabilities that affect his reading and math skills. *Id.* Dr. Nichols then found that Leslie's "ability to respond to supervision, to coworkers and to work pressures in a work setting would be impaired with the combination of current symptoms." *Id.* Dr. Nichols also determined that Leslie had deficits that "would interfere with his ability to remember, understand and carry out work related instructions." *Id.* Finally, Dr. Nichols noted that while Leslie cannot handle his own funds, he could live independently with support. *Id.*

The ALJ gave Dr. Nichols's opinion little weight. R. 37. Though the ALJ acknowledged that Dr. Nichols's opinion suggested that Leslie "has limitations in his ability to perform . . . mental functions associated with work," she discounted the opinion because it was broad and did not note specific function-by-function limitations. *Id.*

Leslie raises five arguments related to the ALJ's handling of Dr. Nichols's medical opinion.

7

1. <u>ALJ substituted his judgment for that of Dr. Nichols</u>: Leslie first argues that the ALJ improperly substituted his judgment for the judgment of Dr. Nichols. "[T]he ALJ may not make medical findings herself." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016). But it is the role of an ALJ to resolve conflicting medical evidence. *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984). Here, the ALJ did not take on the role of a physician. Instead, the ALJ reached his residual functional capacity determination by considering all the medical evidence in the record, including Dr. Nichols's opinion evidence. So Leslie's argument that the ALJ improperly substituted his judgment for that of Dr. Nichols's judgment fails.

2. <u>'Some measure of clarity' lacking</u>: Leslie also asserts that the ALJ failed to provide "some measure of clarity" for why he gave Dr. Nichols's opinion little weight. An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Thus, "when the ALJ fails to state with at least some measure of clarity the grounds for his decision," it is inappropriate to affirm "simply because some rationale might have supported the ALJ's conclusion." *Id.* (quotations and citations omitted).

As detailed above, the ALJ explained why he assigned Dr. Nichols's opinion little weight. So Leslie's argument that the ALJ failed to adequately discuss the decision to discount Dr. Nichols's opinion lacks merit.

3. <u>Need to recontact</u>: Leslie's third argument is that if the ALJ had questions about Dr. Nichols's report, he could have requested more information from her. In support of this argument, Leslie cites *Johnson v. Barnhart*, 138 F. App'x 266, 270–71 (11th Cir. 2005), and several district court cases. The quote Leslie relies on from *Johnson* states that "[i]f after weighing the evidence, the Commissioner cannot reach a determination, then she will seek additional information or recontact the physicians." *Id.* at 270. "But saying the ALJ can sometimes reach out to a physician if necessary is not the same thing as saying that the ALJ must always reach out to a physician." *Jones v. Soc. Sec. Admin. Comm'r*, 857 F. App'x 587, 591 (11th Cir. 2021). And because the ALJ ***could make*** a disability determination here, there was no need for him to recontact Dr. Nichols. *See id.*

4. <u>'Degree of suspicion' standard should apply</u>: Citing *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995), Leslie next asks the court to apply 'a degree of suspicion' to the ALJ's decision to assign little weight to Dr. Nichols's opinion.

The court declines to apply the 'degree of suspicion' standard to the ALJ's assessment of Dr. Nichols's medical opinion for two reasons. First, the Eleventh Circuit has not adopted the 'degree of suspicion' standard. *See Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019). Second, even if *Wilder* controlled, *Wilder* is distinguishable from the facts here. In *Wilder*, the consultative examiner's opinion contained the only medical evidence of the claimant's mental

impairments. *See Wilder*, 64 F.3d at 337–38. But here the record includes other opinions and evidence on Leslie's mental impairments. So—even if the Eleventh Circuit adopted *Wilder*'s analysis—*Wilder* does not apply to these facts.

5. <u>No good cause</u>: Leslie's final argument is that the ALJ erred in refusing to accept Dr. Nichols's opinions "without good cause." Leslie offers only this single conclusory statement to support this argument. And because Dr. Nichols was a one-time consultative examiner, the ALJ didn't need good cause to reject her opinions. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

\* \* \*

In summary, none of Leslie's arguments persuades the court that the ALJ erred in evaluating Dr. Nichols's opinion evidence. And Leslie notably hasn't argued that the ALJ gave invalid reasons for rejecting Dr. Nichols's opinions or that substantial evidence doesn't support the ALJ's decision to afford Dr. Nichols's opinions little weight. So the court needn't consider those arguments. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–83 (11th Cir. 2014).

### B. Residual Functional Capacity Determination

Leslie next argues that the ALJ's finding that he has the residual functional capacity to perform a full range of work at all exertional levels lacks the support of substantial evidence. Though it's difficult to parse, the court believes that this argument has three parts.

1. <u>Evidence supports contrary finding</u>: Leslie first argues that the evidence didn't support the finding that he can perform a full range of work at all exertional levels. In support of this argument, Leslie points to (1) the ALJ's finding that he cannot perform his past work, (2) Dr. Nichols's findings, and (3) the massive head injury that causes him to suffer from seizures. But Leslie fails to explain why these facts should have changed the outcome of the ALJ's decision. So Leslie has effectively abandoned this argument. *See Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009).

In any event, it is not this court's role to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178. And here, substantial evidence supports the ALJ's residual functional capacity determination.

As the ALJ recognized, Leslie's physical impairments have caused seizures, fatigue, dizziness, headaches, syncope, and sleeping problems. R. 34. And Leslie's medical records have documented a BMI in the obese range, ill appearance, mild distress, discomfort, elevated blood pressure, and slowed speech. *Id.* The ALJ also acknowledged that Leslie took Keppra and Dilantin to manage his seizures. *Id.*

But the ALJ found that other record evidence established that Leslie's physical impairments, such as obesity and seizure disorder, weren't disabling. For example, the ALJ noted that Leslie's medical records have included a regular heart

rate and rhythm, proper alertness and orientation, lungs clear to auscultation, normal spinal range of motion, proper ambulation, no tenderness to palpitation, normal range of motion, no apparent distress, normal strength, normal blood pressure readings, normal neurological findings with no focal deficits, normal sensations, normal motor activity, normal coordination, a normal gait, and normal speech. R. 431, 448, 451, 455, 461, 491, 509, 515, 541, 548, 757, 841, 868, 875. And the ALJ pointed out that CTs in February 2017, June 2017, August 2017, June 2018, and August 2018 revealed normal findings. R. 425, 493–94, 502, 542, 797.

As for Leslie's mental impairments, the ALJ recognized that the record included mental status examination findings that documented dysthymic mood, a depressed affect, problems performing serial calculations, and problems interpreting proverbs. R. 36. The ALJ also acknowledged that IQ tests suggested that Leslie had an IQ ranging from 71 to 88. *Id.* But the ALJ found that the record as a whole supported the finding that Leslie can work despite his mental impairments. To support this determination, the ALJ pointed to examination findings, which documented normal mood and affect, cooperation, normal behavior, and intact insight and judgment. R. 431, 448, 451, 455, 461, 491, 509, 515, 541, 548, 757, 841, 868, 875. The ALJ also noted that Dr. Nichols's examination found that Leslie could count backward from 20 to 1, spell "world" backwards, recall 3/3 objects after a delay, and identify likenesses between objects. R. 448. The ALJ then noted that

12

Leslie denied having several mental health symptoms, such as crying episodes, hallucinations, delusions, obsessions/compulsions, panic attacks, confusion, behavioral problems, agitation, decreased concentration, dysphoric mood, suicidal ideation, hyperactivity, and anxiety. R. 447–48, 460.

Along with the medical evidence, the ALJ found that Leslie's daily activities showed that his mental limitations weren't disabling. As the ALJ pointed out, Leslie can perform multistep activities, such as shopping and performing personal care. R. 448, 232–40. And the record suggests that Leslie doesn't have a problem getting along with others. For example, he lives with his girlfriend and has other friends that he keeps in contact with. R. 48, 232–40, 448. And Leslie can perform more concentration-intensive tasks like driving. R. 49.

After reviewing the evidence cited by Leslie and the ALJ, the court determines that a reasonable person viewing the record evidence could have assessed the same residual functional capacity as the ALJ. So the court rejects Leslie's argument that the evidence compels the conclusion that he had greater limitations than the nonexertional limitations that the ALJ assessed. *Crawford*, 363 F.3d at 1158.

2. Cannot hold job for significant period: Leslie next asserts that the ALJ erred in considering only whether he could physically perform certain jobs, not whether he could maintain those jobs over a long period. In support of this argument, Leslie cites *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). In that case, the Fifth Circuit

held that a claimant qualifies as disabled if he cannot maintain employment, even if he sometimes can work for short spurts. *See id.* at 822.

If Leslie is arguing that the ALJ legally erred by not explicitly finding that Leslie could maintain the jobs the ALJ found he could perform, this argument lacks merit. As the Fifth Circuit has since clarified, "[u]sually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). And Leslie hasn't explained why this general rule doesn't apply here.

Leslie has also failed to show that the record compels the conclusion that he cannot hold the jobs that the ALJ found he could perform. In fact, Leslie doesn't cite the parts of the record that he contends show that he cannot maintain a job. So he has inadequately briefed this issue. *See Singh*, 561 F.3d at 1278 ("[A]n appellant's brief must include an argument containing 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'" (quoting Fed. R. App. P. 28 (a)(9)(A))).

*Singletary* is also distinguishable. In *Singletary*, the claimant's "personal history indicated that he was never able to hold a job for long periods of time." *Singletary*, 798 F.2d at 822. And all the doctors who examined the claimant determined that he suffered from various mental disorders that caused poor

14

judgment, an inability to relate socially, antisocial tendencies, and poor insight. *See id.* Here, in contrast, Leslie stated in his disability report that though he quit his job in October 2016, he didn't stop working because of his impairments. R. 221. And the ALJ pointed to several examination findings, which showed that Leslie had a normal mood and affect, cooperation, normal behavior, and intact insight and judgment, to support his residual functional capacity determination. R. 431, 448, 451, 455, 461, 491, 509, 515, 541, 548, 757, 841, 868, 875. So Leslie hasn't established that he'd suffer from the same problems as the claimant in *Singletary*.

3. Vocational expert testimony: Leslie finally argues that the ALJ erred in relying on the vocational expert's testimony to find that he wasn't disabled because the hypothetical question posed to the vocational expert assumed he had no exertional limitations.

If substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, the ALJ need not include that limitation in his hypothetical question to the vocational expert. *Crawford*, 363 F.3d at 1161.

The ALJ's hypothetical question to the vocational expert included all the limitations listed in the ALJ's residual functional capacity assessment. As explained above, Leslie hasn't shown that he had limitations greater than those assessed by the ALJ. So the ALJ properly relied on the vocational expert's response to his hypothetical question to determine that Leslie wasn't disabled.

## IV. Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**DONE** on January 3, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE